# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------ X

ORLANDO GODOY, NEREYDA PENA, AUGUSTINA
PICHARDO, VERONICA AZZALINI, BEHZAD PASDAR,
JAIME ALVAREZ, JAIR SALINAS, and SEETA ROJHA,

                    Plaintiffs,

                                        **COMPLAINT**

    - against -

RESTAURANT OPPORTUNITY CENTER OF NEW
YORK, INC.; 417 RESTAURANT LLC a/k/a ROC NY
RESTAURANT LLC d/b/a COLORS; ROC-NY WORKER
OWNER RESTAURANT, LLC a/k/a RWOR; SARU
JAYARAMAN; and GRACE GILBERT (or her
successor), as President of ROC-NY,

                    Defendants.

------------------------------------------------------------------ X

## INTRODUCTION

1.     This action is brought by former members of several interrelated not-for-profit and for-profit corporations operating under the aegis of the RESTAURANT OPPORTUNITY CENTER OF NEW YORK or ROC-NY (hereinafter "ROC-NY" or "ROC"), which have promoted themselves as the vehicle through which restaurant employees, principally those formerly employed at the restaurant known as Windows on the World, who were displaced as a result of the terrorist attacks of September 11, 2001, were going to establish and operate a worker-owned and operated restaurant. This action, which alleges violations of the New York State Labor Law and the governing documents of ROC-NY and its interrelated organizations, seeks damages and injunctive relief on behalf of members of ROC-NY who performed "sweat equity" work only to find themselves unlawfully expelled from ROC-NY, without employment,

without equity or involvement in the "worker-owned" restaurant initiated by ROC-NY, and without pay for the hundreds of hours of work they did to promote ROC-NY and the establishment of the "worker-owned" restaurant.

## PARTIES

2. Plaintiffs were, at all relevant times, members of ROC-NY, and were, additionally, members of the Workers Cooperative Committee of ROC-NY. Plaintiffs ORLANDO GODOY ("Godoy"), VERONICA AZZALINI ("Azzalini"), AUGUSTINA PICHARDO ("Pichardo"), and NEREYDA PENA ("Pena") were, prior to September 11, 2001, employed at Windows on the World, a restaurant located on the 106th and 107th floors of One World Trade Center. Plaintiffs BEHZAD PASDAR ("Pasdar"), JAIME ALVAREZ ("Alvarez,"), JAIR SALINAS ("Salinas"), and SEETA ROYHA ("Royha") were employed in other restaurants that joined ROC-NY in around 2002 and 2003. During 2004 and 2005, plaintiffs Pena and Pichardo were members of the Board of Directors of ROC-NY.

3. Defendant ROC-NY is a not-for-profit corporation organized under the laws of the State of New York. Its principal office is located at 275 Seventh Avenue, New York, New York 10001.

4. Defendant 417 RESTAURANT LLC ("417 Restaurant LLC") is a corporation which is owned in large part by ROC-NY and which operates a restaurant doing business as "Colors," located at 417 Lafayette Street in Manhattan, New York.

5. Defendant ROC-NY WORKER OWNER RESTAURANT, LLC, also known as RWOR ("RWOR"), is, upon information and belief, a wholly owned subsidiary of ROC-NY

2

which grew out of and/or was created by the Workers Co-op Committee of ROC-NY. Ostensibly, RWOR was or is to be the vehicle through which employees of 417 Restaurant LLC were to exercise their ownership interest in 417 Restaurant LLC.

6. Defendant SARU JAYARAMAN ("Jayaraman") is, and at all relevant times, was, the Executive Director of ROC-NY, and is a director of 417 Restaurant, LLC.

7. Defendant GRACE GILBERT ("Gilbert") is and at all relevant times was the President of ROC-NY. Gilbert is sued in her official capacity. If she no longer holds this position, this suit is brought against her successor.

## STATEMENT OF RELEVANT FACTS

8. As a result of the terrorist attacks of September 11, 2001, 73 employees of the restaurant Windows on the World, which was located at One World Trade Center, were killed. Another 265 employees of Windows on the World, which included 215 members of Local 100, Hotel and Restaurant Employees Union (hereinafter "HERE"), lost their jobs.

9. HERE established a relief fund (the "HERE Fund") for the survivor families and displaced workers which collected over $3 million in charitable contributions.

10. ROC-NY was created in April 2002 and initially helped devise a needs-based assistance plan for the HERE Fund. Applications for assistance were, in fact, filed with ROC-NY. ROC-NY also provided training, financed by HERE, to enhance the skills of the displaced workers. In around August 2003, the HERE Fund granted $112,627 to ROC-NY to support the former Windows on the World workers in an announced endeavor to create a cooperatively owned restaurant.

11. Plaintiffs Godoy, Pena, and Pichardo became involved with ROC in 2002. In order to join, they were told they had to attend eight consecutive meetings. At the meetings members were given job information and training information. Godoy, Pena, and Pichardo became members in August 2002. Several months later, ROC-NY began seeking grants to launch a cooperatively owned restaurant which would be run by displaced workers. A Cooperative Committee of ROC was created to, ostensibly, direct this effort. Godoy, Pena, and Pichardo were initial members of this committee, and the other plaintiffs joined that committee when they joined ROC-NY. The Cooperative Committee had its own Board of Directors which, at various times, included many of the plaintiffs in this action.

12. Plaintiffs Pasdar, Alvarez, and Azzalini joined ROC-NY and its Cooperative Committee in around 2003. Plaintiff Salinas joined in around 2004.

13. In creating ROC-NY's Cooperative Committee, defendant Jayaraman told plaintiffs, and the members of ROC-NY, that Cooperative Committee members would become owners of the new restaurant in return for doing a certain amount of work, which she described as "sweat equity," for the Committee. That number was set at 100 hours; over the next two years, the hours required were increased as plaintiffs and other Cooperative Committee members were asked to meet new 100 hour requirements.

14. In October 2002, ROC-NY began to negotiate with the Cooperativa Italiana di Ristorazione ("CIR"), an Italian cooperatively owned restaurant group, over a proposal to have CIR invest $1 million in the ROC-NY cooperative restaurant. ROC-NY did fund raising to send a delegation of twelve (12) ROC-NY members, including plaintiffs Godoy and Pena, to Italy to meet with CIR. ROC-NY's effort to create a cooperatively owned restaurant was written up in

4

*The New York Times*, *People Magazine*, and numerous other publications. Eventually, CIR agreed to invest $1 million.

15. Members of the Cooperative Committee, whom ROC-NY began to describe as "worker-owners," and who ROC-NY described in its August 2004 liquor license as "co-owners," worked at various fund-raising events, doing catering, cooking, serving, set-up, clean-up, shopping, and driving. All money raised at these events, including tips, went to ROC-NY. The plaintiffs went to conferences, met with consultants, organized, led, and participated in picket lines in front of restaurants allegedly violating state and federal labor laws, met with politicians, and attended press conferences designed to publicize ROC's efforts and plans. Plaintiffs and other members of the Cooperative Committee were also required to go to weekly meetings, which lasted three to five hours; at those meetings participants developed plans for the restaurant, for fund-raising, for publicity, and so forth. These efforts and meetings continued throughout 2003 and 2004.

16. In a December 4, 2004 letter to the CIR, ROC-NY advised CIR that members of the co-op would earn equity in the RWOR "through sweat equity participation requirements." That letter further stated that the "capital [of RWOR] will be sweat equity converted to cash equivalent in stock."

17. In late September 2004, plaintiffs and all members of the ROC-NY Cooperative Committee were advised that there would be a mandatory meeting on October 4, 2004, and that failure to attend would result in being eliminated from the list of cooperative owners, despite the fact that no such requirement existed in the ROC-NY Bylaws.

18.     At the October 4, 2004 meeting, Cooperative Committee members were told that they had to sign a contract, at that meeting, or lose their membership in ROC-NY. The contract required that each member "contribute" an additional three hours of work per week and pledge that until the restaurant opened, they would continue to perform the sort of unpaid labor for ROC-NY which they had performed for several years. The contract was distributed only in English, even though many of the Committee members did not read English well. Discussion amongst Committee members was prohibited, and efforts to postpone the signing requirement to another day were rebuffed.

19.     Plaintiff Godoy refused to sign the document and was told on December 13, 2004, without basis in the ROC-NY Bylaws, that he would lose his Cooperative membership if he did not sign the contract by December 20, 2004. Godoy refused and, after explaining his position to the Board of the Cooperative Committee, on January 3, 2005 he was expelled from the Cooperative Committee, and ROC-NY, without further process. Godoy was not permitted thereafter to attend Cooperative Committee or ROC-NY meetings.

20.     On or about January 18, 2005, ROC-NY released a proposed business plan for the restaurant, which was to be called "Colors." In that business plan, in describing the "Equity Investors," ROC-NY, in mentioning the staff, stated: "Not only are they workers, but owners, with a vested interest in providing first class hospitality and food."

21.     On January 25, 2005, ROC-NY convened a "Restaurant Industry Summit," the speakers at which included three members of the Cooperative Committee: plaintiff Behzad Pasdar, Rafael Duran, and Utzok Zaidan. The three were described as "restaurant workers [who] will be co-owners of Colors, the ROC-NY cooperatively owned restaurant."

22. On February 5, 2005, ROC-NY held a "Staff and Board Retreat" at which the staff discussed, among other things, the lack of co-op member participation. In fact, only about 22 of around 35 Committee members had been regularly attending meetings. However, these members who ceased participation did not lose membership in either the Cooperative Committee or ROC.

23. In about March 2005 it began to become apparent to plaintiffs and other members of the Cooperative Committee that, in fact, ROC-NY's plan for worker ownership was not what many had believed it to be. ROC-NY had decided to constitute itself as the sole member of the worker's ownership corporation. At the outset, the restaurant stock was to be owned 50 percent by ROC-NY and 50 percent by CIR, with a transfer of 20 percent to the Cooperative Corporation or RWOR at some future indeterminate date.

24. Pasdar and Pena, as members of the Cooperative Committee Board, began to question whether what was being created was a worker-owned entity. Try as they might, these Board members found that it was impossible to challenge the plan adopted by ROC-NY. Four of the six Cooperative Committee Board members drew up a list of demands, which were quickly signed by 15 of the 22 active Cooperative Committee members.

25. The dissenting Cooperative Committee members brought their demands to a Cooperative Committee membership meeting in March 2005. The handed their demands to defendant Jayaraman and subsequently retained counsel, who attempted to speak with ROC-NY to negotiate over the terms of worker-ownership. On or about April 25, 2005, ROC-NY brought a mediator – whom it had chosen – to meet with the dissident members and with ROC-NY. When the dissidents asked to bring an attorney into the meeting, the mediator cancelled the

7

meeting. The mediator, however, convened a meeting with several of the Cooperative Committee members not allied with Pasdar and Pena. The dissenters attempted to enter the meeting, led by plaintiff Pasdar. When they entered the room over the mediator's protest and efforts to push the door closed, she adjourned the meeting.

26. On May 7, 2005, plaintiff Pasdar received a letter from defendant Gilbert advising him that on May 11, 2005 the ROC-NY Board would be voting about whether to terminate his membership in ROC-NY based on "allegations of aggressive and violent behavior towards members, staff, and consultants of ROC-NY." The only right Pasdar was given at the meeting was an opportunity to speak prior to the Board's vote. He was given no particulars about the exact actions he had taken to warrant discipline.

27. On May 10, 2005, counsel for Pasdar requested that Pasdar have a fair hearing, including specification of charges, the right to confront witnesses, and the right to counsel. Counsel did not receive a response.

28. On May 11, 2005, several persons at the ROC Board meeting made statements critical of Pasdar, describing him as "belligerent" and stating that Pasdar "represented a real threat to the success of this venture" and that he put the CIR investment at "serious risk." Pasdar was not allowed to be present for all of the statements against him. Subsequently, the Board voted to expel Pasdar from ROC-NY, and, consequently, from its Cooperative Committee. At that same meeting, the ROC-NY Board adopted a series of resolutions affirming the structure of the "Co-operative" restaurant that the dissenters had objected to.

29. After Pasdar's expulsion, ROC-NY began to hold "mandatory meetings," something not provided for in its Bylaws. Cooperative Committee members were engaged in one-on-one, intimidating meetings with ROC-NY's leadership and paid staff. After thirteen Cooperative Committee members delivered a letter to the ROC-NY Board on May 23, 2005 demanding a "true say in how the cooperative is established, structured and run," ROC's efforts escalated. Plaintiffs Pena's and Pichardo's terms on the ROC-NY Board ended and they were not asked to continue. Closely controlled and intimidating meetings of the Cooperative Committee were held, at which various legal documents were "reviewed" and "adopted." Members were called and visited at home by ROC-NY staffer. In addition, members were told that a new 100 hours of sweat equity would be required and that the first cooperative owners would be designated in August 2005.

30. As a result of these demoralizing and intimidating actions, many Cooperative Committee members other than Pasdar and Godoy ceased coming to meetings. The remaining plaintiffs and many other Cooperative Committee members had their membership in the Cooperative Committee terminated without basis in the ROC Bylaws, and without due process, and were not included in the initial group of "worker-owners" announced by ROC-NY in around August 2005.

31. In around December 2005, ROC-NY opened Colors. None of the plaintiffs, and no more than 10 to 12 of the ROC-NY Co-op Committee members who had contributed the required sweat equity, were included as owners and were present as part of the restaurant's opening day workforce.

32. As a result of defendant's aforedescribed actions, plaintiffs received no compensation for the work they did for ROC-NY, lost their membership in ROC, lost their ownership interest in Colors, and suffered severe emotional distress, to their injury.

33. Plaintiffs restate and reincorporate by reference each and every allegation set forth above in the Causes of Action set forth below.

## AS AND FOR A FIRST CAUSE OF ACTION

34. By failing to pay plaintiffs for their work and by collecting their tips, defendants violated §§ 191, 196(d), and 198(b)(2) of the New York State Labor Law.

## AS AND FOR A SECOND CAUSE OF ACTION

35. By intentionally failing to pay plaintiffs a minimum wage for the work they performed, defendants violated 29 U.S.C. § 206.

## AS AND FOR A THIRD CAUSE OF ACTION

36. By expelling plaintiffs from ROC-NY without proper notice of charges and/or a fair hearing, for reasons not properly considered misconduct under the ROC-NY Bylaws, defendants violated those Bylaws and the common law of voluntary associations.

## AS AND FOR A FOURTH CAUSE OF ACTION

37. Plaintiffs were expelled from membership in ROC-NY and its Cooperative Committee because they expressed views about the cooperatively owned restaurant which

differed from those of the leadership and staff of ROC-NY, especially defendant Jayaraman. Expulsion premised upon the expression of views violates ROC-NY Bylaws and the common law of voluntary associations.

## AS AND FOR A FIFTH
## CAUSE OF ACTION

38.     By engaging in a campaign of intimidation and expulsion of members in order to get various resolutions passed and documents adapted during May and June 2005, ROC-NY violated its Bylaws, the New York State Non-for-Profit Corporation Law, and the common law of voluntary associations.

## AS AND FOR A SIXTH
## CAUSE OF ACTION

39.     By failing to employ plaintiffs as employees of Colors, and maintaining their status as potential worker-owners, however illusory, defendants breached a contractual agreement with plaintiffs that they would receive such employment and ownership as a result of their "sweat equity" on behalf of ROC and the development of Colors.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that the Court enter judgment against defendants, jointly and severally:

1.     Ordering the employment of plaintiffs at the restaurant known as Colors.

2.     Awarding plaintiffs back pay:

 a. For the work they performed on behalf of ROC-NY during the period 2002 – 2005.

 b. For the wages they did not earn as a consequence of not being employed by Colors after it opened.

3. Reinstating plaintiffs to ROC-NY and its Cooperative Committee, and prohibiting plaintiffs' expulsion because they express views, arguments, and opinions contrary to those of the ROC-NY staff.

4. Voiding all corporate resolutions adopted by the membership of ROC-NY and/or ROC's Cooperative Committee in May and June 2005.

5. Ordering that plaintiffs, and all others who completed the requisite "sweat equity," be given the status of shareholders in the corporation created to hold the ownership interest of employees of Colors.

6. Awarding plaintiffs costs and attorneys' fees.

Dated: New York, New York
   July 24, 2007

           SCHWARTZ, LICHTEN & BRIGHT, P.C.
           Attorneys for Plaintiffs

           By: _____
           Arthur Z. Schwartz
           275 Seventh Avenue, 17th Floor
           New York, New York 10001
           tel.: (212) 228-6320
           fax: (212) 358-1353
           e-mail: districtleader@msn.com