UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ORLANDO GODOY, NEREYDA PENA, AUGUSTINA
PICHARDO, VERONICA AZZALINI, BEHZAD PASDAR,
JAIME ALVAREZ, JAIR SALINAS, and SEETA ROJHA,

                              Plaintiffs,

        -against-                                                          07 Civ 7287 (DAB)

RESTAURANT OPPORTUNITY CENTER OF NEW
YORK, INC.; 417 RESTAURANT LLC a/k/a ROC NY
RESTAURANT LLC d/b/a COLORS; ROC-NY WORKER
OWNER RESTAURANT, LLC a/k/a RWOR; SARU
JAYARAMAN; and GRACE GILBERT (or her
successor), as President of ROC-NY,

                              Defendants.
-------------------------------------------------------------------------X

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
# THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

LEWIS, CLIFTON & NIKOLAIDIS, P.C.
275 Seventh Avenue, Suite 2300
New York, New York 10001-6708
(212) 419-1500

Attorneys for defendants Restaurant
Opportunities Center of New York, 417
Lafayette Restaurant LLC, ROC-NY
Worker Owner Restaurant LLC, Saru
Jayaraman, and Grace Gilbert

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..................................................................................

**SUMMARY OF PERTINENT ALLEGATIONS** ...........................................................

**PLAINTIFFS' CLAIMS** .......................................................................................

**ARGUMENT** ......................................................................................................

**POINT I:**  **THE RULE 12(b) STANDARD** ..............................................................

**POINT II:**  **ROC-NY DID NOT BREACH
ITS CONTRACT WITH PLAINTIFFS** .................................................

    **A.**  **Plaintiffs entered into a contract with ROC-NY** ......................

    **B.**  **Plaintiffs cannot allege a Breach of Contract claim
because they do not allege performance on their part** ..............

    **C.**  **Plaintiffs' alleged expulsion from ROC-NY two
years ago precludes their Breach of Contract claim**....... ..........

**POINT III:**  **PLAINTIFFS ARE NOT
COVERED BY THE FLSA** ....................................................................

    **A.**  **ROC-NY is not an enterprise engaged in commerce** ................

    **B.**  **Plaintiffs are not "employees" of ROC-NY** ...............................

**POINT IV:**  **PLAINTIFFS HAVE NO SUBSTANTIVE
CLAIMS UNDER NEW YORK STATE LABOR LAW** ....................

**POINT V:**  **PLAINTIFFS CANNOT PLEAD A COMMON
LAW FRAUD CLAIM UNDER NEW YORK LAW** ...........................

**CONCLUSION** ...................................................................................................

This Memorandum of Law is submitted by all defendants – Restaurant Opportunities

Center of New York ("ROC-NY"), 417 Lafayette Restaurant LLC ("417 Lafayette"), ROC-NY

Worker Owner Restaurant LLC ("WROR"), Saru Jayaraman, and Grace Gilbert – in support of

their motion to dismiss the First Amended Complaint.

<u>**PRELIMINARY STATEMENT**</u>

   This action was brought by eight former members of ROC-NY, a not-for-profit

corporation founded in 2002 to advocate on behalf of low wage, mostly immigrant restaurant

workers in New York City.  Plaintiffs claim that they were not only members of ROC-NY, but

were also "employees," and they seek back wages under federal and state wage and hour laws

for the "hours" they allegedly worked in 2002-2005.  Plaintiffs also claim that they were parties

to a contract with ROC-NY pursuant to which they were to perform work in return for "sweat

equity" in a newly created restaurant, and they seek the benefit of the alleged contract, i.e.,

employment and equity in the restaurant.  Finally, plaintiffs allege that defendants fraudulently

induced them to perform work for ROC-NY by falsely promising that the work would result in

future employment and an ownership interest in the restaurant.

   All of plaintiffs' legal claims are defective.  As we show below, plaintiffs did indeed

enter into written "sweat equity" agreements with ROC-NY.  Their breach of contract claim

fails, however, because the plaintiffs did not hold up their end of the bargain.  They did not

attend Cooperative Committee meetings and did not work the agreed upon number of hours –

two of the critical requirements under the contract.  Moreover, because this claim is based

essentially on plaintiffs' contention that they were unlawfully expelled from ROC-NY and the

Cooperative Committee two years ago, it is time barred under Article 78's four month limitations

period.

   The wage and hour violations alleged by plaintiffs are non-existent, because (1) ROC-

NY is not an "enterprise engaged in commerce" under the FLSA, and (2) plaintiffs were not "employees" of ROC-NY.  Plaintiffs were <u>members</u> of ROC-NY, a non-profit membership corporation, and they were engaged, along with other ROC-NY members, in a pioneering effort to establish a worker-owned restaurant in New York City.  Plaintiffs do not even suggest in their Amended Complaint that they expected compensation, in the form of wages or benefits, for the "hours" they worked.  Rather, as acknowledged by plaintiffs, the performance of those "sweat equity" hours constituted one element of a contract which, if plaintiffs had actually satisfied their contractual obligations, would have led to their participation in the new cooperative restaurant. Consequently, the Fair Labor Standards Act ("FLSA") does not apply to this case.

Nor do plaintiffs have a substantive claim for wages under New York State Labor Law, primarily because they fail to allege that they had any contractual right to "wages."  Again, plaintiffs allege the existence of a "sweat equity" agreement – an agreement that provides for an ownership share in the cooperative restaurant, but does <u>not</u> provide for the payment of wages.

Finally, plaintiffs' allegations of "false promises" do not make out a claim for common law fraud under New York State law.  Plaintiffs allege that they were promised, but did not receive employment or an ownership share in the new restaurant.  However, an unfulfilled contractual pledge does not constitute fraud.  New York law compels dismissal of any purported "fraud" claim where the proponent seeks only to enforce contractual promises and there is no allegation that defendants violated a legal duty independent of the contract.

## SUMMARY OF PERTINENT ALLEGATIONS

Though plaintiffs attempt to dress up this case with FLSA, Labor Law and common law fraud claims, it is in essence a breach of contract lawsuit.  Plaintiffs claim (1) that they were

parties to a "sweat equity" agreement pursuant to which they were to work an agreed upon number of hours in return for a share of a new cooperative restaurant; (2) that they collectively worked hundreds of hours; and (3) that they did not receive the shares they were promised.  As a remedy for this alleged breach, plaintiffs seek both an ownership interest in, and employment at, the new restaurant.

Specifically, plaintiffs allege that they were all, at some point in time, "members of ROC-NY," a New York State not-for-profit corporation.  Comp. ¶¶ 3-4.[1]  ROC-NY was created in April 2002, after the World Trade Center attacks of September 11, 2001, to support the former Windows on the World workers – for example, by providing training to enhance the skills of the displaced workers.  Comp. ¶¶ 9-11.  In order to become a member of ROC-NY, plaintiffs were told that they had to attend eight consecutive meetings.  At the meetings, members were given information on jobs and training.  Comp. ¶ 12.

Some months after its formation, ROC-NY announced a plan to establish a cooperatively owned restaurant, and created a Cooperative Committee to direct the effort.  All of the plaintiffs became members of the Cooperative Committee.  Comp. ¶ 12.  Plaintiffs were allegedly told by Saru Jayaraman, the Executive Director of ROC-NY, that Cooperative Committee members would become owners of the new restaurant in return for doing a certain amount of work for the Committee which she described as "sweat equity."  Comp. ¶ 14.  Plaintiffs allege that the required number of hours was set at 100, but that over the next two years Committee members

_____

[1] The First Amended Complaint, attached as Exhibit A to the Declaration of Daniel E. Clifton, dated October 12, 2007, is referred to herein as "Comp. ¶ __."  Solely for purposes of this motion to dismiss, we accept as true the well-pleaded factual allegations in the Complaint. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

were asked to meet a new 100 hour work requirement.  Plaintiffs further allege that they

"performed this work with the understanding that it would gain them equity in this new

restaurant and result in ongoing employment once the restaurant was in operation."  Comp. ¶ 14.

     In October 2002, according to plaintiffs, ROC-NY commenced negotiations with an

Italian cooperative ("CIR") to invest in the new cooperative restaurant, and fund raising was

conducted to send a delegation of ROC-NY members, including plaintiffs Orlando Godoy and

Nereyda Pena, to meet with the investor in Italy.  Comp. ¶ 15.  Members of the Cooperative

Committee, "whom ROC-NY began to describe as 'worker-owners,'" worked at various fund-

raising events "doing catering, cooking, serving, set-up, clean-up, shopping, and driving."

Comp. ¶ 16.  Plaintiffs allege that the money raised at these events, including money paid to

ROC-NY as tips, went to ROC-NY.  Id.

     In addition, plaintiffs allege that they "went to conferences, met with consultants,

organized, led, and participated in picket lines in front of restaurants allegedly violating state and

federal labor laws, met with politicians, and attended press conferences designed to publicize

ROC's efforts and plans."  Id.  Plaintiffs and other Cooperative Committee members "were also

required to go to weekly meetings, which lasted three to five hours," at which they "developed

plans for the restaurant, for fund-raising, publicity, and so forth."  Id.  Plaintiffs say that they

engaged in these activities, which continued throughout 2003 and 2004, "without pay based

upon the continuing representations by ROC-NY that their labor guaranteed them equity in the

'worker-owned restaurant' they were working to create, and would result in ongoing paid

employment in this new restaurant."  Id.

     Plaintiffs allege that a "mandatory meeting" was held on October 4, 2004, and that

"Cooperative Committee members were told that they had to sign a contract, at that meeting, or lose their membership in ROC-NY and its Cooperative Committee."  Comp. ¶¶ 18-19.  The contract "required that each member 'contribute' an additional three hours of work per week and pledge that until the restaurant opened, they would continue to perform the sort of unpaid labor for ROC-NY which they had performed for several years."  Comp. ¶ 19.  According to plaintiffs, the contract "was distributed only in English" and discussion among Committee members "was prohibited."  Id.  Moreover, plaintiffs claim that "efforts to postpone the signing requirement to another day were rebuffed."  Id.

Plaintiffs allege that Godoy refused to sign the contract, and was told on December 13, 2004 that he would lose his Cooperative Committee membership if he did not sign by December 20, 2004.  Comp. ¶ 20.  Godoy refused, and on January 3, 2005, he was allegedly expelled from the Cooperative Committee and ROC-NY "without further process."  Plaintiffs allege that Godoy "was not permitted thereafter to attend Cooperative Committee or ROC-NY meetings." Id.  Plaintiffs further allege that by early 2005 only about 22 out of 35 Committee members were regularly attending meetings, but that members who ceased participation did not lose their membership in either the Cooperative Committee or ROC-NY.  Comp. ¶ 23.

Plaintiffs allege that in around March 2005 it was becoming apparent to them that "ROC-NY's plan for 'cooperative' worker ownership was not what ROC-NY and Jayaraman had represented it to be."  Comp. ¶ 24.  In a seemingly self-contradictory allegation, plaintiffs next assert (1) that ROC-NY "had decided to constitute itself as the sole member of the worker's ownership corporation;" (2) that "[a]t the outset, the restaurant stock was to be owned 50 percent by ROC-NY and 50 percent by CIR, with a transfer of 20 percent to the Cooperative Corporation

or RWOR at some future indeterminate date;" and (3) that plaintiffs had previously been led by ROC-NY and Jayaraman to believe that the restaurant "was to be wholly owned by its employees." Id.

According to plaintiffs, various members of the Cooperative Committee, including Pena and Behzad Pasdar, began to question whether they had been misled, but "found that it was impossible to challenge the plan adopted by ROC-NY." Comp. ¶ 25. Plaintiffs next allege a series of events leading to the expulsion of Pasdar from ROC-NY. Plaintiffs allege that in early spring 2005 they retained their own counsel in an effort to negotiate over the terms of worker-ownership; that in April 2005, ROC-NY brought in a mediator to meet with the dissenting Committee members; that the mediator convened a meeting with several Committee members not allied with Pasdar and Pena; and that when the dissenters, led by Pasdar, attempted to enter the meeting "over the mediator's protest and efforts to push the door closed," the mediator adjourned the meeting. Comp. ¶ 26.

Pasdar subsequently received a letter from ROC-NY advising him that the ROC-NY Board would be meeting on May 11, 2005 to vote on "whether to terminate his membership in ROC-NY based on 'allegations of aggressive and violent behavior towards members, staff, and consultants of ROC-NY.'" Comp. ¶ 27. Plaintiffs allege that Pasdar was given no particulars in the letter about the exact actions he had taken to warrant discipline, but that statements were made at the May 11, 2005 meeting that Pasdar was "belligerent," that he "represented a real threat to the success of this venture," and that he put the CIR investment at "serious risk." Comp. ¶ 29. The Board voted to expel Pasdar from ROC-NY and, consequently, from its Cooperative Committee. Id.

At the same meeting, the ROC-NY Board allegedly adopted a series of resolutions affirming the structure of the cooperative restaurant that the dissenters had objected to. Id. Subsequently, plaintiffs allege, ROC-NY began to hold "mandatory meetings" which were not provided for in the ROC-NY bylaws, Cooperative Committee members were subjected to "one-on-one, intimidating meetings" with ROC-NY's leadership and staff, plaintiffs Pena and Pichardo's terms on the ROC-NY Board expired and they were not asked to continue, "[c]losely controlled and intimidating meetings" of the Cooperative Committee were held, and members were visited at home by a ROC-NY staffer. Comp. ¶ 30.  In addition, plaintiffs allege that Committee members "were told that a new 100 hours of sweat equity would be required and that the first cooperative owners would not be designated until August 2005." Id.

According to plaintiffs, many Cooperative Committee members, other than Pasdar and Godoy, ceased coming to meetings as a result of these "demoralizing and intimidating actions, and a sense that they had been misled." Comp. ¶ 31.  Plaintiffs allege that "the remaining plaintiffs and many other Cooperative Committee members" had their membership in the Cooperative Committee terminated as a result of their failure to attend meetings, and were not included in the initial group of "worker-owners" announced by ROC-NY in August 2005. Id.

Consequently, none of the plaintiffs were included as "owners" of the restaurant "Colors"[2] when it opened in December 2005, and none were present as part of the restaurant's opening day workforce. Comp. ¶ 32.  As a result of defendants' actions, plaintiffs allege that they "received no compensation for the work they did for ROC-NY, lost their membership in

---

[2] Plaintiffs allege that defendant 417 Lafayette Restaurant LLC (sued herein as "417 Restaurant LLC") is a corporation which is owned in large part by ROC-NY and which operates a restaurant doing business as "Colors." Comp. ¶ 5.

ROC, were given no ownership interest in Colors, or even the RWOR,[3] and suffered severe emotional distress."  Comp. ¶ 33.

## PLAINTIFFS' CLAIMS

Based on the allegations set forth above, plaintiffs make the following claims:

1.      That defendants violated Labor Law §§ 191, 196-d and 198-b, subd. 2 by failing to pay plaintiffs for their work and by collecting their tips.

2.      That defendants violated the Fair Labor Standards Act, 29 U.S.C. § 206, by intentionally failing to pay plaintiffs the statutory minimum wage for the work they performed.

3.      That defendants' failure to provide plaintiffs with equity or employment in the restaurant in return for their "sweat equity" constitutes a breach of contract.

4.      That defendants fraudulently induced plaintiffs to perform work for ROC-NY by falsely promising that the work would result in an ownership interest in the restaurant and future employment.

Plaintiffs seek a judgment against defendants (1) ordering the employment of plaintiffs at the restaurant Colors; (2) awarding back pay to plaintiffs both for the work they allegedly performed on behalf of ROC-NY and for wages they did not earn as a consequence of not being employed at Colors; and (3) ordering defendants to give plaintiffs the status of shareholders in Colors and/or RWOR.  Plaintiffs also seek an award of costs and attorney's fees.

None of these claims has merit.  As shown below, the First Amended Complaint should be dismissed in its entirety.

---

[3] Plaintiffs allege that defendant ROC-NY Worker Owner Restaurant LLC, also known as RWOR, is a wholly owned subsidiary of ROC-NY, and was to be the vehicle through which employees of Colors were to exercise their ownership interest in the restaurant.  Comp. ¶ 6.

**ARGUMENT**

**POINT I**

**THE RULE 12(b) STANDARD**

The function of a motion to dismiss is "merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support thereof."

Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.

1984).  "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor."  Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994).  The plaintiff must

provide enough facts to state a claim for relief that is plausible on its face.  Bell Atlantic Corp. v.

Twombly, 127 S.Ct. 1955, 1974 (2007).  Pleading legal conclusions, however, is not sufficient to

prevent dismissal.  Smith v. Local 819, IBT Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).

**POINT II**

**ROC-NY DID NOT BREACH
ITS CONTRACT WITH PLAINTIFFS**

**A.     Plaintiffs entered into a contract with ROC-NY**

Defendants are fully in accord with plaintiffs' allegation that their "sweat equity"

arrangement with ROC-NY was contractual.  See Comp. ¶ 37.  All of the plaintiffs, except

Godoy, signed written agreements in October 2004 which set forth the specific obligations that

every signatory was required to fulfill.  See Exhibit C.[4]  The contract, entitled "Cooperative

---

[4] The contracts between plaintiffs and ROC-NY, annexed to the Clifton Declaration as
Exhibit C,  are properly before the Court on this motion to dismiss because they are integral to
the First Amended Complaint, which both refers to plaintiffs' contractual relationship with
ROC-NY and relies upon it.  International Audiotext Network, Inc. v. AT&T, 62 F.3d 69, 72 (2d
Cir. 1995); Cortec Indus., Inc. v. Sum Holding, Inc., 949 F.2d 42, 48 (2d Cir. 1991).

Contract – 10.04.04," requires that each plaintiff commit to the following:

- Contributing a minimum of 3 hours a week and completing my 100 hour sweat equity obligation by December 20, 2004.
- Attending all Coop related meetings including the weekly general meeting - Monday's at 3:30 PM (If I cannot make this meeting, I must bring a letter from my employer and suggest 2 alternate times during the week that I am available to meet)
- Contributing to the start-up of the restaurant by participating in one of 4 Committees and being accountable for all responsibilities and deadlines:
  - Project management
  - Catering
  - Naming and Branding
  - Chef/GM Selection
- The ongoing mandatory requirement once the restaurant is open to support ROC-NY's organizing, outreach and advocacy efforts by:
  - Attending at least one ROC-NY meeting per month
  - Paying monthly dues
  - Attending protests (at least 1 per campaign)
  - Supporting workers in any dispute with employers
  - Testifying in favor of worker legislation
  - Becoming members of the New York Restaurant Association and advocating for workers rights
- Complying with the by-laws and operating agreement of the cooperative
- Holding my elected representatives accountable to his/her responsibilities

Exhibit C.[5]

Each plaintiff (except Godoy) signed the Cooperative Contract under the following

legend:

By signing this contract, I understand the obligations I am committing to and also understand my membership will be revoked if I do not adhere to these responsibilities.

Exhibit C.

**B.    Plaintiffs cannot allege a Breach of Contract claim
because they do not allege performance on their part**

---

[5] As apparent from the documents annexed as Exhibit C, some of the contracts are in English and some are in Spanish since, as plaintiffs allege, not every Cooperative Committee reads English well (Comp. ¶ 19); but the content is identical.

The elements required to state a valid claim for breach of contract in New York are: "(1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages resulting from the breach." Marks v. New York University, 61 F.Supp.2d 81, 88 (S.D.N.Y. 1999) (quoting K. Bell & Associates, Inc. v. Lloyd's Underwriters, 827 F.Supp. 985, 988 (S.D.N.Y. 1993)); see also Coastal Aviation, Inc. v. Commander Aircraft Co., 937 F.Supp. 1051, 1060 (S.D.N.Y. 1996), aff'd, 108 F.3d 1369 (2d Cir. 1997). Because the plaintiffs must prove each of these elements, the absence of support for any one of them requires a judgment in favor of the defendants. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In the First Amended Complaint, plaintiffs have adequately alleged the existence of a "sweat equity" contract with ROC-NY pursuant to which they were required, inter alia, to work an agreed upon number of hours in return for employment and an ownership interest in the new cooperative restaurant. They have also alleged a breach of that contract – they did not receive either employment or an ownership share in the restaurant. However, plaintiffs' breach of contract claim is fatally deficient because they did not allege, and cannot allege, due performance of the contract on their part. In fact, they allege the opposite.

Based on the allegations of the Complaint, it is clear that none of the plaintiffs satisfied the obligations to which they had committed themselves. Every individual who signed a contract was required, among other things, to attend Cooperative Committee meetings and to complete 100 hours of sweat equity. However, plaintiffs themselves allege in their Complaint that they simply stopped coming to meetings after Pasdar was expelled from ROC-NY. See Comp. ¶ 31 ("many Cooperative Committee members other than Pasdar and Godoy ceased

11

coming to meetings. The remaining plaintiffs ... as a result, had their membership in the Cooperative Committee terminated...").  Thus, plaintiffs failed to satisfy one of the most critical components of the Cooperative Contract – attendance at Cooperative Committee meetings.

Nor do plaintiffs allege that any of them actually worked the 100 hours required under the contract.  Regardless of whether it is actually true, as plaintiffs allege, that the required number of hours was increased after they first joined the Cooperative Committee, the fact is that they all signed the Cooperative Contract in October 2004 (except Godoy), and thus acquiesced in the "new" requirements set forth therein.  "It is a well settled principle of contract law that a new agreement between the same parties on the same subject matter supercedes the old agreement." Ottawa Office Integration Inc. v. FTF Business Systems, Inc., 132 F.Supp.2d 215, 219 (S.D.N.Y. 2001).  As alleged in the Complaint, Godoy declined even to sign a Cooperative Contract (Comp. ¶ 20), and therefore, he was not eligible to participate in the restaurant.  Given the contractual requirement to maintain membership in ROC-NY, Pasdar also was no longer eligible to participate after his expulsion from ROC-NY in May 2005.  Comp. ¶ 29.

Given their own course of action (or inaction), it is clear why plaintiffs' membership in the Cooperative Committee was terminated, as alleged in the Complaint.  Comp. ¶ 31.  They stopped coming to meetings, and they did not complete their required hours.  ROC-NY did not breach its contract with plaintiffs; rather, the plaintiffs failed to satisfy their own contractual obligations to ROC-NY.  Accordingly, plaintiffs' breach of contract claim should be dismissed.

**C.    Plaintiffs' alleged expulsion from ROC-NY two
years ago precludes their Breach of Contract claim**

Plaintiffs' breach of contract claim is predicated on allegations that ROC-NY violated its own bylaws and failed to afford plaintiffs "due process" at the time they were expelled.  Thus,

plaintiffs allege (1) that Godoy was told, "without basis in the ROC-NY Bylaws," that he would

lose his Cooperative Committee membership if he did not sign the Cooperative Contract by

December 20, 2004, and was expelled from the Cooperative Committee and ROC-NY on

January 3, 2005 "without further process" after refusing to sign (Comp ¶ 20); (2) that Pasdar was

expelled from ROC-NY on May 11, 2005 without being given a fair hearing (Comp. ¶¶ 27-29);

(3) that ROC-NY began to hold "mandatory meetings" after Pasdar's expulsion which was

"something not provided for in its Bylaws" (Comp. ¶ 30); and (4) that "the remaining plaintiffs,"

as a result of their failure to attend Cooperative Committee meetings, "had their membership in

the Cooperative Committee terminated without basis in the ROC bylaws, and without due

process" (Comp. ¶ 31).

Plaintiffs allege that they were all "unlawfully expelled" from ROC-NY (Comp. ¶ 1), and

specifically refer to such "expulsion" in their breach of contract cause of action.  See Comp. ¶ 37

("The expulsion of plaintiffs from ROC, and the failure to provide them with equity in the

restaurant or employment at the restaurant, was a breach of contract.").  Yet, despite their

"unlawful expulsion," plaintiffs do not seek "reinstatement" of their membership as a remedy.

See Comp., pp. 12-13.  Presumably, they recognize that any such claim is governed by Article 78

of the CPLR, and is therefore time barred under New York State law.[6]

It is settled law in New York State that "a claim against a non-profit corporation for a

breach of its own rules is properly brought pursuant to Article 78."  Bowrin v. Catholic Guardian

---

[6] Plaintiffs' original Complaint contained three separate causes of action based on their alleged "expulsion" from ROC-NY, and expressly sought reinstatement as a remedy (Exhibit B, ¶¶ 36, 37, 38 and p. 12, ¶ 3).  All such claims were dropped by plaintiffs in their First Amended Complaint filed several weeks later.

Society, 417 F.Supp.2d 449, 476 (S.D.N.Y. 2006); Gertler v. Goodgold, 107 A.D.2d 481, 487

(1st Dept. 1985).  See also Gray v. Canisius College of Buffalo, 76 A.D.2d 30, 33 (4th Dept.

1980) (corporations may "be compelled in an article 78 proceeding to fulfill not only obligations

imposed upon them by State or municipal statutes but also those imposed by their internal

rules").  The statute of limitations requires that any proceedings brought under Article 78 be

commenced within four months of the alleged breach.  CPLR § 217(1).

     Plaintiffs' breach of contract claim seeking an ownership share in the cooperative

restaurant – which plaintiffs were allegedly deprived of by reason of their expulsion from ROC-

NY and the Cooperative Committee (Comp. ¶ 31) – is a thinly disguised attempt to recast the

claims they previously withdrew in order to circumvent the Article 78 statute of limitations.  It

should not be permitted by the court.

## POINT III

### PLAINTIFFS ARE NOT
### COVERED BY THE FLSA

     Plaintiffs describe the "work" they allegedly performed for ROC-NY in Paragraph 16 of

their Complaint.  First, plaintiffs allege that in order to raise funds to send a delegation to Italy to

negotiate with a possible investor in the cooperative restaurant, Cooperative Committee

members worked at various events "doing catering, cooking, serving, set-up, clean-up, shopping,

and driving."  Comp. ¶ 16.  In addition, plaintiffs allege that they "went to conferences, met with

consultants, organized, led, and participated in picket lines in front of restaurants allegedly

violating state and federal labor laws, met with politicians, and attended press conferences

designed to publicize ROC's efforts and plans."  Id.  Plaintiffs and other Cooperative Committee

members "were also required to go to weekly meetings, which lasted three to five hours," at

which they "developed plans for the restaurant, for fund-raising, publicity, and so forth." Id.

Plaintiffs say that they engaged in these activities "without pay based upon the continuing

representations by ROC-NY that their labor guaranteed them equity in the 'worker-owned

restaurant' they were working to create, and would result in ongoing paid employment in this

new restaurant." Id. Now, two years after they left the Cooperative Committee, plaintiffs claim

that in fact they were "employees"of ROC-NY, and under the FLSA, should have been paid for

the hours they "worked." They are incorrect.

In Tony and Susan Alamo Foundation, 471 U.S. 290 (1985), the leading non-profit

private sector FLSA case, the Secretary of Labor sued a non-profit religious institution that

operated commercial businesses staffed by "associates," most of whom were former "drug

addicts, derelicts, or criminals" who were undergoing rehabilitation by the defendant institution.

Id. at 292. In order for the Foundation's commercial activities to be subject to the FLSA, the

Supreme Court explained that "two conditions must be satisfied." Id. at 295. "First, the

Foundation's businesses must constitute an '[e]nterprise engaged in commerce or in the

production of goods for commerce.'" Id. (quoting 29 U.S.C. § 203(s)). "Second, the associates

must be 'employees' within the meaning of the Act." Id. In Alamo, the Court found that both

conditions were satisfied. In the instant case, neither is satisfied.

**A.      ROC-NY is not an enterprise engaged in commerce**

The Court stated in Alamo that the FLSA "contains no exception for commercial

activities conducted by religious or other nonprofit organizations." 471 U.S. at 297 (emphasis

added). It observed that there was "broad congressional consensus that ordinary commercial

businesses should not be exempted by the Act simply because they happened to be owned by

religious or other nonprofit organizations." Id. at 298 (footnote omitted). The Court pointed to the Labor Department's regulation defining "business purpose" (and noted that it was entitled to considerable weight):

> Activities of eleemonsynary, religious, or educational organization [sic] may be performed for a business purpose. Thus, where such organizations engage in ordinary commercial activities, such as operating a printing and publishing plant, the business activities will be treated under the Act the same as when they are performed by the ordinary business enterprise.

In Alamo, the defendant Foundation derived its income from the operation of a number of commercial businesses, including service stations, clothing and grocery outlets, hog farms construction companies and a motel. The Court found that the Foundation's businesses "serve[d] the general public in competition with ordinary commercial enterprises, ... and the payment of substandard wages would undoubtedly give petitioners and similar organizations an advantage over their competitors." Id. at 299. This was exactly the kind of "unfair method of competition" that the Act was intended to prevent. Id.

In FLSA cases following Alamo, the courts have focused on whether the non-profit entity served the general public in competition with ordinary commercial enterprises. In Archie v. Grand Central Partnership, Inc., 997 F.Supp. 504, 533 (S.D.N.Y. 1998), for example, the district court found that three nonprofit entities were covered by the FLSA, because their outreach programs – staffed by formerly homeless and jobless participants – served the general public in the security and recycling areas in competition with ordinary commercial enterprises, and the payment of substandard wages gave them an unfair advantage. However, in Briggs v. Chesapeake Volunteers in Youth Services, Inc., 68 F.Supp.2d 711, 715 (E.D.Vir.1999), the court found that a non-profit corporation which provided community service opportunities to

16

individuals who were involved in proceedings before juvenile and domestic relations courts was

not an "enterprise engaged in commerce or in the production of goods for commerce," because it

did not compete with other commercial ventures.  See also Joles v. Johnson County Youth Serv.

Bureau, Inc., 885 F.Supp. 1169, 1174-75 (S.D.Ind. 1995) (non-profit organization providing

services to troubled youth was not engaged in business purpose under the FLSA); Wagner v.

Salvation Army, 660 F.Supp. 466 (E.D.Tenn. 1986) (Salvation Army was not an enterprise under

the FLSA since it did not engage in commercial activities).

ROC-NY, as alleged in the Complaint, is a non-profit organization which supports and

advocates on behalf of restaurant workers.  The work allegedly performed by plaintiffs – at

catering events, participating in picket lines, appearing at press conferences, meeting with

politicians, and attending conferences – was for the purpose of supporting other restaurant

workers, or publicizing ROC-NY's efforts, or planning the new cooperative restaurant or fund-

raising for that effort.  Comp. ¶ 31.  None of these activities, which plaintiffs allege they

performed in 2003 and 2004, were performed for a "business purpose."  Neither ROC-NY nor its

Cooperative Committee served the general public or engaged in commercial activities in

competition with ordinary commercial enterprises.[7]  Accordingly, the first condition for FLSA

coverage is not satisfied – ROC-NY's activities do not must constitute an "enterprise engaged in

commerce or in the production of goods for commerce."

**B.**    **Plaintiffs are not "employees" of ROC-NY**

---

[7] Although plaintiffs specifically allege that they were "employees" of ROC-NY, a non-profit corporation (Comp. ¶ 3), they also named as defendants two for-profit corporations: 417 Lafayette Restaurant LLC and ROC-NY Worker Owner Restaurant LLC.  However, plaintiffs implicitly acknowledge that they never actually worked for those two organizations since they concede that the cooperative restaurant did not even open until December 2005, long after plaintiffs left ROC-NY and the Cooperative Committee.  Comp. ¶ 32.

The Supreme Court also made it clear in <u>Alamo</u> that "the test of employment under the Act is one of 'economic reality.'" 471 U.S. at 301 (<u>citing Goldberg v. Whitaker House Cooperative, Inc.</u>, 366 U.S. 28, 33 (1961))  Noting that the "associates" in that case were entirely dependent on the Foundation for long periods of time (in some cases for several years), the Court upheld the lower court's finding that they "must have expected to receive in-kind benefits" in exchange for their services. <u>Id</u>. at 301.  While the associates in <u>Alamo</u> did not expect compensation in the form of ordinary wages, they did expect the Foundation to provide their food, shelter, clothing, transportation and medical benefits which, the Court observed, were simply wages in another form. <u>Id</u>. at 293, 301.

The individual's expectation is thus the critical factor in determining whether the performance of work for a non-profit, private sector organization is truly voluntary.  In <u>Archie v. Grand Central Partnership, Inc.</u>, formerly homeless and jobless participants in an employment program alleged that the defendant non-profit entities unlawfully paid them sub-minimum wages.  Finding that the participants performed a variety of tasks (including janitorial, clerical, food preparation, and security services), worked 40 hours per week for five to six months, and were paid $1.00 per hour, the court held that the plaintiffs were "employees" under the FLSA. 997 F.Supp. at 533-35.

Unlike the "associates" in <u>Alamo</u>, who received benefits from the Foundation and worked for long periods of time, or the "trainees" in <u>Archie</u>, who worked 40 hours a week and actually were paid an hourly wage (though below the minimum wage), the plaintiffs in the instant case had <u>no</u> expectation of compensation and do not suggest otherwise in their Complaint.  To the contrary, plaintiffs expressly allege that the reason they performed the above-

18

described "work" was to fulfill their "sweat equity" obligations under the Cooperative Contract. Upon the completion of these (and other) obligations, plaintiffs expected to become worker-owners in the new cooperative restaurant. That was their sole "expectation." See Comp. ¶¶ 14, 16, 37. Nor is there any suggestion by plaintiffs that the "work" they performed for ROC-NY was done on a long term or continuous basis or that they were economically (or in any other way) dependent on ROC-NY. Because plaintiffs are not "employees" within the meaning of the FLSA, their claim for unpaid wages should be dismissed.

**POINT IV**

**PLAINTIFFS HAVE NO SUBSTANTIVE
CLAIMS UNDER NEW YORK STATE LABOR LAW**

In order "to assert a substantive claim for wages under Article 6 of the Labor Law, a plaintiff must have an enforceable contractual right to those wages." Gallegos v. The Brandeis School, 189 F.R.D. 256, 259 (E.D.N.Y. 1999). Accord: Zaitsev v. Salomon Bros., 60 F.3d 1001, 1004 (2d Cir. 1995); Ellis v. Provident Life & Accident Ins. Co., 3 F.Supp.2d 399, 413 (S.D.N.Y. 1998); Tierney v. Capricorn Investors, L.P., 189 A.D.2d 629, 632 (1st Dept. 1993), lv to app den, 81 N.Y.2d 710 (1993). In the instant case, plaintiffs do not allege the existence of any agreement to support their claim that they were entitled to wages. They point instead to a "sweat equity" contract. That contract, however, does not provide for wages in return for work, it provides for an ownership share in a restaurant in return for, inter alia, completing a 100 hour "sweat equity" obligation.

Such agreements fall entirely outside the purview of New York's Labor Law. A sweat equity agreement, providing for a piece of the business at some future date, is analogous to an agreement for "incentive compensation" or equity-based compensation. The courts have held

19

that this kind of compensation does not constitute "wages" under the Labor Law – it is "more in the nature of a profit-sharing arrangement and [is] both contingent and dependent, at least in part, on the financial success of the business enterprise." Truelove v. Northeast Capital & Advisory, Inc., 95 N.Y.2d 220, 223-24 (2000). Accord: Guiry v. Goldman, Sachs & Co., 31 A.D.3d 70, 71 (1st Dept. 2006) (unvested, contingent rights to equity-based compensation – specifically, restricted shares of the employer's stock – "constitutes, as a matter of law, 'incentive compensation ... not included in the definition of "wages" under Labor Law § 190(1)'") (quoting Marsh v. Prudential Securities, 1 N.Y.3d 146, 154 (2003)); International Paper Co. v. Suwyn, 978 F.Supp. 506, 514 (S.D.N.Y. 1997) (same); Canet v. Gooch Ware Travelstead, 917 F.Supp. 969, 995 (E.D.N.Y. 1996) (same); Tischmann v. ITT/Sheraton Corp., 882 F.Supp. 1358, 1369 (S.D.N.Y. 1995) (same). Given the nature of plaintiffs' contract with ROC-NY – i.e., providing for equity in the cooperative restaurant if certain obligations were met – plaintiffs clearly have no claim for "wages" under the Labor Law.

Plaintiffs' specific reference to certain sections of the Labor Law is also unavailing. For example, Labor Law § 191, which is cited by plaintiffs (Comp. ¶ 35), regulates only the frequency with which employers are required to pay "wages" – i.e., weekly, biweekly or monthly. It plainly does not apply to the occasional and irregular hours "worked" by Cooperative Committee members in satisfaction of their sweat equity obligations under the contract..

Nor does Labor Law § 198-b have any application to this case. That section makes it unlawful for any person to demand a "kick-back" of wages from an employee. Section 198-b, subd. 2, provides, in pertinent part:

> Whenever any employee who is engaged to perform labor <u>shall be</u>
> <u>promised an agreed rate of wages for his or her services, be such</u>
> <u>promise in writing or oral, or shall be entitled to be paid or provided</u>
> <u>prevailing wages or supplements pursuant to article eight or nine of</u>
> <u>this chapter</u>, it shall be unlawful for any person ... to request, demand,
> or receive ... a return, donation or contribution of any part or all of said
> employee's wages ... upon the statement, representation, or understanding
> that failure to comply with such request or demand will prevent such
> employee from procuring or retaining employment.  (emphasis added)

Plaintiffs do not allege that they were "promised an agreed rate of wages" for the sweat equity hours they worked under the Cooperative Contract.[8]  Rather, plaintiffs allege – and the contract makes clear – that in return for 100 hours of work (and satisfying certain other obligations) they would receive a share in the ownership of the cooperative restaurant.  Without the promise of any "agreed rate of wages," there can be no violation of Section 198-b.

## POINT V

### PLAINTIFFS CANNOT PLEAD A COMMON LAW FRAUD CLAIM UNDER NEW YORK LAW

To maintain a common law fraud claim under New York law where, as here, the operative facts derive from a contractual relationship, a litigant must allege and prove: (1) a legal duty separate from the duty to perform under the contract; (2) a fraudulent misrepresentation collateral or extraneous to the contract; and (3) "special damages" that are caused by the misrepresentation and are unrecoverable as contract damages.  <u>Bridgestone/Firestone v. Rcovery Credit Serv. Inc.</u>, 98 F.3d 13, 20 (2d Cir. 1996).  A complaint fails to support a claim of fraud when "it is duplicative of the breach of contract claim."  <u>Guilbert v. Gardner</u>, 480 F.3d 140, 148 (2d Cir. 2007).  <u>See</u> <u>also</u> <u>Tesoro</u> <u>Petroleum Corp. v. Holborn Oil Co., Ltd.</u>, 108 A.D.2d 607 (1st

---

[8] Nor do plaintiffs allege that they were entitled to be paid prevailing wages or supplements pursuant to Article 8 of the Labor Law (for public work) or Article 9 (for building service employees).

21

Dept. 1985) (affirming dismissal of common law fraud claim where "plaintiff did not allege that defendants breached any duty ... separate and apart from the contract duty when they misrepresented their intent to perform as promised"); Sforza v. Health Insurance Plan of Greater New York, Inc., 210 A.D. 214 (2nd Dept. 1994) (dismissing upon finding "no alleged misrepresentations of facts collateral to the purported contract of employment"); Metropolitan Transportation Authority v. Triumph Advertising Productions, Inc., 116 A.D.2d 526, 527-28 (1st Dept. 1986) (dismissing where "alleged fraudulent misrepresentations ... relate only to the specifications of the contract").

     Plaintiffs in the instant case have not pleaded a contract-based misrepresentation cause of action containing these substantive elements. They claim (1) no legal duty separate and apart from the Cooperative Contract, and (2) no fraudulent misrepresentation collateral or extraneous to that contract. Rather, plaintiffs have premised their common law fraud claim exclusively upon the contract – the misrepresentations they allege relate only to the contractual breach which underlies their Third Cause of Action.

     An unfulfilled contractual pledge does not constitute actionable deceit. Comtomark, Inc. v. Satellite Communicaitons Network, Inc., 116 A.D.2d 499, 500-01 (1st Dept. 1986) ("Breach of promise sounds in contract, not fraud."); Caniglia v. Chicago Tribune-New York News Syndicate Inc., 204 A.D.2d 233 (1st Dept. 1994) ("It is well settled that a cause of action for fraud does not arise where ... the only fraud alleged merely relates to a contracting party's alleged intent to breach a contractual obligation."). Longstanding New York law compels dismissal of any purported "fraud" claim where, as here, the proponent seeks only to enforce contractual promises concerning future conduct. Channel Master Corp. v. Aluminum Limited

Sales, Inc., 4 N.Y.2d 403, 406-07 (1958) (fraud claimant must allege "statements of existing fact, as opposed to expressions of future expectation").

In their fraud cause of action, plaintiffs seek only to enforce contractual promises concerning future conduct. Thus, plaintiffs allege that defendants "induced plaintiffs to provide work for ROC by promising, falsely, that the work would result in an ownership share in the restaurant and future employment. The failure to such an ownership interest or future employment constitutes fraud." Comp. ¶ 38. By reason of these "false promises," plaintiffs seek a judgment ordering defendants to provide them with both employment and an ownership interest in Colors – the same relief they seek for defendants' alleged breach of contract. Because plaintiffs' claim of fraud is duplicative of their breach of contract claim, it must be dismissed.

Moreover, as noted above, plaintiffs cannot plead a cognizable fraud claim under circumstances where the operative facts derive from a contractual relationship unless they can show "special damages" proximately caused by their reliance upon the alleged fraudulent misrepresentation that are not recoverable under a contract theory. See Andres v. LeRoy Adventures, Inc., 201 A.D.2d 262 (1st Dept. 1994) (affirming dismissal where plaintiff only claimed "expenses that do not exceed the recovery sought under the contract cause of action").[9]

Plaintiffs indisputably claim no "special damages" not available under a contract theory. In fact, their First Amended Complaint makes abundantly clear that the remedy plaintiffs seek for fraud is the very same remedy they seek for the alleged breach of contract: employment at the

---

[9] This principle complements the general prohibition against awarding "lost profits" and/or "benefit of the bargain" damages under a fraud theory. Delcor Laboratories, Inc. v. Cosmair, Inc., 169 A.D.2d 639 (1st Dept.), app. dismissed, 78 N.Y.2d 952 (1991); Manfra Tordella & Brookes, Inc. v. Bunge, 794 F.2d 61, 64 (2d Cir. 1986) (no "benefit-of-bargain damages under fraud theory).

restaurant and a share of the ownership.  <u>Compare</u> Comp. ¶¶ 37 and 38.  In other words,

plaintiffs seek only "benefit of the bargain" damages under their common law fraud claim.

Assuming *arguendo* that plaintiffs could state a cognizable claim for breach of contract, they

could recover the damages they seek exclusively under the contract-based theory without fraud

allegations.  <u>Metropolitan Transportation Authority</u>, 116 A.D.2d at 527-28 (dismissing where

"plaintiff seeks no special damages unrecoverable" under contract theory); <u>Tesoro Petroleum</u>,

108 A.D.2d at 607 (same).

        At bottom, plaintiffs have done exactly what the courts have repeatedly rejected – they

have endeavored to transform an archetypal contract claim into a misrepresentation claim by

"tacking on" conclusory and wholly extraneous allegations of fraudulent conduct.  The court

should dismiss plaintiffs' Fourth Cause of Action.

<u>**CONCLUSION**</u>

        For the foregoing reasons, the court should dismiss plaintiffs' First Amended Complaint

in its entirety.

Dated:  New York, New York
        October 12, 2007

                                        LEWIS, CLIFTON & NIKOLAIDIS, P.C.


                                        /S/ Daniel E. Clifton
                        By:     _____
                                        Daniel E. Clifton (DC 0632)
                                        275 Seventh Avenue, Suite 2300
                                        New York, New York 10001-6708
                                        (212) 419-1500

                                        Attorneys for defendants Restaurant
                                        Opportunities Center of New York, 417
                                        Lafayette Restaurant LLC, ROC-NY

24

Worker Owner Restaurant LLC, Saru
Jayaraman, and Grace Gilbert