UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ORLANDO GODOY, NEREYDA PENA, AUGUSTINA
PICHARDO, VERONICA AZZALINI, BEHZAD PASDAR,
JAIME ALVAREZ, JAIR SALINAS, and SEETA ROJHA,

                             Plaintiffs,

      -against-                                            07 Civ 7287 (DAB)

RESTAURANT OPPORTUNITY CENTER OF NEW
YORK, INC.; 417 RESTAURANT LLC a/k/a ROC NY
RESTAURANT LLC d/b/a COLORS; ROC-NY WORKER
OWNER RESTAURANT, LLC a/k/a RWOR; SARU
JAYARAMAN; and GRACE GILBERT (or her
successor), as President of ROC-NY,

                             Defendants.
------------------------------------------------------------------------X


**DEFENDANTS' REPLY MEMORANDUM OF LAW**


                                                    LEWIS, CLIFTON & NIKOLAIDIS, P.C.
                                                    275 Seventh Avenue, Suite 2300
                                                    New York, New York 10001-6708
                                                     (212) 419-1500

                                                    Attorneys for defendants Restaurant
                                                    Opportunities Center of New York, 417
                                                    Lafayette Restaurant LLC, ROC-NY
                                                    Worker Owner Restaurant LLC, Saru
                                                    Jayaraman, and Grace Gilbert

**TABLE OF CONTENTS**

POINT I:   ROC-NY DID NOT BREACH
           ITS CONTRACT WITH PLAINTIFFS ................................................................ 1

      A.   The Cooperative Contract may be
           considered by the court on this motion ........................................................ 1

      B.   Plaintiffs cannot allege a Breach of Contract claim
           because they do not allege performance on their part ............................... 2

      C.   Plaintiffs' alleged expulsion from ROC-NY two years before this
           action was commenced precludes their Breach of Contract claim .......... 3

POINT II:  PLAINTIFFS ARE NOT
           COVERED BY THE FLSA .................................................................................. 5

POINT III: PLAINTIFFS HAVE NO SUBSTANTIVE
           CLAIM UNDER NEW YORK STATE LABOR LAW ...................................... 8

POINT IV:  PLAINTIFFS' PROPOSED AMENDMENT DOES
           NOT RESCUE THEIR DEFECTIVE FRAUD CLAIM ...................................... 9

CONCLUSION ............................................................................................................................ 11

Defendants submit this Reply Memorandum of Law in further support of their motion to dismiss the First Amended Complaint.

## POINT I

### ROC-NY DID NOT BREACH ITS CONTRACT WITH PLAINTIFFS

**A. The Cooperative Contract may be considered by the Court on this motion**

Plaintiffs' opposition to defendants' motion to dismiss the breach of contract claim appears to be based primarily on the hope that the court will not actually get to see the contract. Thus, in the First Amended Complaint, plaintiffs allege that (1) defendants repeatedly made statements, beginning in 2002, proposing a sweat equity arrangement whereby members of ROC-NY would contribute 100 hours of work in return for an ownership share and employment in a new cooperative restaurant; (2) in October 2004 defendants prepared a written sweat equity contract which was signed by every plaintiff except Godoy; and (3) defendants reneged on their end of the contract by not giving plaintiffs an ownership share or employment in the restaurant that opened in December 2005 – but they do not attach a copy of the contract to the complaint and they strongly object when defendants attach a copy to their motion papers.[1]

There is no valid basis to exclude the "sweat equity" contract from consideration on this motion. Defendants' alleged violation of the "sweat equity" agreement is the gravaman of

---

[1] It is understandable, in one sense, why plaintiffs would make such an objection. With the actual contract in the record, it is much more difficult for them to say things like: "The contract was distributed only in English, even though many of the Committee members did not read English well." Comp. ¶ 19. As is evident from the attached documents, the contract was written and distributed in both English and Spanish. Exhibit C. Or that "efforts to postpone the signing requirement to another day [after the October 4, 2004 meeting] were rebuffed." Comp. ¶ 19. Plaintiff Jair Salinas signed his contract on October 7, 2004. Exhibit C.

plaintiffs' breach of contract claim; it is therefore difficult to understand how plaintiffs can argue that the contract is not integral to their complaint. Plaintiffs argue that the contract should be excluded because they do not rely "solely" on the written agreement – they rely instead on their earlier oral "sweat equity" agreements with ROC-NY. This argument is untenable.

It is indisputable that every plaintiff (except Godoy) signed the written Cooperative Contract in October 2004. See Exhibit C. Consequently, that agreement superseded any prior agreements concerning the same subject. "It is a well settled principle of contract law that a new agreement between the same parties on the same subject matter supercedes the old agreement." Ottawa Office Integration Inc. v. FTF Business Systems, Inc., 132 F.Supp.2d 215, 219 (S.D.N.Y. 2001). The Cooperative Contract, therefore, necessarily becomes the central (in fact, the only) agreement at issue in this case.[2]

**B.    Plaintiffs cannot allege a Breach of Contract claim
       because they do not allege performance on their part**

In order to state a valid claim for breach of contract, a plaintiff must allege and prove every element of the claim: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages resulting from the breach. Marks v. New York University, 61 F.Supp.2d 81, 88 (S.D.N.Y. 1999). The absence of support for

---

[2] Plaintiffs contend, incorrectly, that the Cooperative Contract may not be considered by the court because the complaint did not "solely" rely on that document. In Cortec Indus., Inc. v. Sum Holding, Inc., 949 F.2d 42, 48 (2d Cir. 1991), the court took into consideration a document outside the pleadings upon which the complaint "solely" relied, but in subsequent cases the Second Circuit has held that such documents may be taken into consideration on a Rule 12(b) motion if relied upon "heavily" by the plaintiffs. See, e.g. International Audiotext Network, Inc. v. AT&T, 62 F.3d 69, 72 (2d Cir. 1995) (court considers contract not attached to complaint where the complaint "relies heavily upon its terms and effect"); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (document considered by court where "complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint").

any one of these elements requires a judgment in favor of the defendant.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In the instant case, plaintiffs' failure to allege the essential element of due performance on their part is fatal to their breach of contract claim.

From their own allegations, it is clear that plaintiffs did not satisfy the obligations to which they had committed themselves.  Each individual who signed the Cooperative Contract was required, among other things, to attend Cooperative Committee meetings.  Yet plaintiffs themselves allege that they stopped coming to meetings after plaintiff Behzad Pasdar was expelled from ROC-NY.  See Comp. ¶ 31 ("many Cooperative Committee members other than Pasdar and Godoy ceased coming to meetings.  The remaining plaintiffs ... as a result, had their membership in the Cooperative Committee terminated...").  Plaintiffs thus failed to satisfy a critical component of the Cooperative Contract – attendance at Cooperative Committee meetings.[3]  Because plaintiffs, by their own admission, failed to satisfy their contractual obligations, they cannot maintain a breach of contract claim.

**C.    Plaintiffs' alleged expulsion from ROC-NY two years before this action was commenced precludes their Breach of Contract claim**

Plaintiffs concede that they cannot seek redress for their alleged expulsion from ROC-NY and its Cooperative Committee in 2005 – despite the allegation that their membership was "terminated without basis in the ROC bylaws" (Comp. ¶ 31) – because any such claim would be time barred under New York law.  In this regard, plaintiffs note that they withdrew a previous claim seeking reinstatement, and state that they now "seek no relief based upon the violation of

---

[3] Plaintiffs also fail to allege anywhere in their complaint that they actually worked the 100 hours required under the Cooperative Contract.

ROC-NY's bylaws." Pl. Mem. of Law at 17. However, plaintiffs object to defendants' characterization of their breach of contract claim as an attempt to "recast" their previously withdrawn claims in order to circumvent the statute of limitations. "Nowhere," plaintiffs assert, does the First Amended Complaint or the Cooperative Contract state "that either employment at the new restaurant or the holding of an ownership interest in the restaurant requires membership in ROC-NY." Id. "Absent proof of such a requirement," plaintiffs argue, "dismissal would be inappropriate." Id. Again, plaintiffs are mistaken.

The CooperativeContract expressly requires that signatories maintain membership in ROC-NY. Thus, all signatories must commit to: "Attending all Coop related meetings including the weekly general meeting;" "Attending at least one ROC-NY meeting per month;" and "Paying monthly dues" to ROC-NY. Exhibit C. Plaintiffs would be hard pressed to suggest that a contractual requirement to pay monthly dues to ROC-NY and to attend ROC-NY meetings does not constitute a requirement to maintain membership in ROC-NY. Every plaintiff except Godoy signed the Cooperative Contract, in either English or Spanish, under the following legend: "By signing this contract, I understand the obligations I am committing to and also understand my membership will be revoked if I do not adhere to these responsibilities." Id.

Plaintiffs' breach of contract claim is thus directly predicated on their alleged expulsion from ROC-NY and their allegation that ROC-NY violated its own bylaws when they were expelled. Plaintiffs specifically refer to their "expulsion" in the breach of contract cause of action. See Comp. ¶ 37 ("The expulsion of plaintiffs from ROC, and the failure to provide them with equity in the restaurant or employment at the restaurant, was a breach of contract."). Plaintiffs' expulsion from ROC-NY necessarily ended their involvement in ROC-NY's Cooperative

Committee, and deprived them of any opportunity to secure an ownership share and employment in the cooperative restaurant. Plaintiffs certainly had the right to challenge their expulsion if they believed it violated the ROC-NY bylaws, but any such challenge had to be brought pursuant to Article 78 of the CPLR, and therefore had to be brought within four months of their expulsion – not more than two years later.

## POINT II

### PLAINTIFFS ARE NOT COVERED BY THE FLSA

Plaintiffs find it "baffling to understand" how ROC-NY cannot be said to be "engaged in commerce" under the Fair Labor Standards Act ("FLSA") given the fact that it developed plans to open a restaurant, raised capital for the restaurant, and negotiated with an Italian entity to invest a million dollars in the restaurant. Pl. Mem. of Law at 19. Unfortunately for plaintiffs, their expressed bafflement stems from an apparent misunderstanding of the FLSA.

ROC-NY is certainly not exempt from the FLSA simply because it happens to be a non-profit organization. The Supreme Court has held that "ordinary commercial businesses should not be exempted by the Act simply because they happened to be owned by religious or other nonprofit organizations." Tony and Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 298 (1985). In this case, however, defendants are not subject to the FLSA for the "work" alleged by plaintiffs because they were not engaged in a commercial enterprise in competition with other commercial enterprises. In Alamo, a religious organization derived its income from the operation of commercial businesses such as service stations, clothing and grocery outlets, hog farms, construction companies, and a motel. The Court found that the organization was subject to the FLSA, because it "serve[d] the general public in competition with ordinary commercial

5

enterprises, ... and the payment of substandard wages would undoubtedly give petitioners and similar organizations an advantage over their competitors." Id. at 299.

Following Alamo, the issue of whether non-profit entities serve the general public in competition with ordinary commercial enterprises has been the central focus of the courts in determining whether such entities are covered by the FLSA. See e.g. Archie v. Grand Central Partnership, Inc., 997 F.Supp. 504, 533 (S.D.N.Y. 1998) (nonprofit entities are covered by FLSA because their programs served the general public in the security and recycling areas in competition with ordinary commercial enterprises); Briggs v. Chesapeake Volunteers in Youth Services, Inc., 68 F.Supp.2d 711, 715 (E.D.Vir.1999) (non-profit corporation which provided community service opportunities to individuals involved in proceedings before juvenile and domestic relations courts was not an "enterprise engaged in commerce" because it did not compete with other commercial ventures); Joles v. Johnson County Youth Serv. Bureau, Inc., 885 F.Supp. 1169, 1174-75 (S.D.Ind. 1995) (non-profit organization providing services to troubled youth was not engaged in business purpose under FLSA).

In the instant case, plaintiffs confuse the activities undertaken by ROC-NY during the period of 2003 to 2004 with the actual operation of a restaurant. Undoubtedly, if defendants had been operating a restaurant in 2003-04, and plaintiffs had worked at the restaurant as cooks, waiters, busboys or in any other capacity, defendants would be covered by the FLSA. But that is not what was alleged in the complaint. Plaintiffs allege that the "work" they performed – participating in fundraising events, marching on picket lines, appearing at press conferences, speaking with politicians, and attending meetings – was for the purpose of supporting other restaurant workers, or publicizing ROC-NY events, or planning the new cooperative restaurant, or

fund-raising for that effort. Comp. ¶ 31. The cooperative restaurant did not open until December 2005, long after plaintiffs left ROC-NY. Comp. ¶ 32. Prior to that time, as the complaint makes clear, ROC-NY did not serve the general public, and did not engage in commercial activities in competition with other commercial enterprises. Until December 2005, defendants' activities do not constitute an "enterprise engaged in commerce or in the production of goods for commerce," and therefore, an essential condition for FLSA coverage is not satisfied.

Plaintiffs also misconstrue the nature of the "economic reality" test enunciated by the Court in Alamo. The "associates" in that case were found to be "employees" under the FLSA, because they were entirely dependent on the Foundation for long periods of time and "expected to receive in-kind benefits" in exchange for their services – not in the form of wages, but in the form of food, shelter, clothing, transportation and medical benefits which, the Court observed, were simply wages in another form. 471 U.S. at 293, 301. Similarly, in Archie, participants in an employment program were found to be "employees" under the FLSA because they worked 40 hours per week for five to six months at a time (and were paid $1.00 per hour). 997 F.Supp. at 533-35.

Unlike the "associates" in Alamo or the "trainees" in Archie, plaintiffs in the instant case were not dependent on their alleged "employment" and had no expectation of compensation. To the contrary, plaintiffs expressly allege that the reason they performed the above-described "work" was to fulfill their "sweat equity" obligations under the Cooperative Contract. Upon the completion of these (and other) obligations, plaintiffs expected to become worker-owners in the cooperative restaurant when it opened. Plaintiffs state as much in their brief – the "work" they performed was in contemplation of a future "ownership share of the restaurant as well as a job in

7

that restaurant." Pl. Mem. of Law at 21. That was their sole "expectation." See Comp. ¶¶ 14, 16, 37.

Thus, by their own allegations, plaintiffs do not meet the "economic reality" test set forth in Alamo. The "work" they performed for ROC-NY was intermittent, and was not done on a long term or continuous basis. Plaintiffs were in no way economically dependent on ROC-NY; they had no expectation of either wages or in-kind benefits such as food, shelter or clothing. Because plaintiffs were not "employees" within the meaning of the FLSA, their claim for unpaid wages should be dismissed.

## POINT III

### PLAINTIFFS HAVE NO SUBSTANTIVE CLAIM UNDER NEW YORK STATE LABOR LAW

In the instant case, plaintiffs allege the existence of a "sweat equity" contract which provides for an ownership share in a restaurant in return for, inter alia, completing a 100 hour "sweat equity" obligation. As explained more fully in defendants' main brief, such agreements fall entirely outside the purview of New York's Labor Law. Equity-based compensation does not constitute "wages" under the Labor Law. See Truelove v. Northeast Capital & Advisory, Inc., 95 N.Y.2d 220, 223-24 (2000); Guiry v. Goldman, Sachs & Co., 31 A.D.3d 70, 71 (1st Dept. 2006) (unvested, contingent rights to equity-based compensation – specifically, restricted shares of the employer's stock – "constitutes, as a matter of law, 'incentive compensation ... not included in the definition of "wages" under Labor Law § 190(1)'") (quoting Marsh v. Prudential Securities, 1 N.Y.3d 146, 154 (2003)); International Paper Co. v. Suwyn, 978 F.Supp. 506, 514 (S.D.N.Y. 1997) (same); Canet v. Gooch Ware Travelstead, 917 F.Supp. 969, 995 (E.D.N.Y. 1996) (same); Tischmann v. ITT/Sheraton Corp., 882 F.Supp. 1358, 1369 (S.D.N.Y. 1995) (same).

Although plaintiffs mischaracterize defendants' argument and dismiss without discussion the cases cited by defendants as irrelevant, they fail to explain why these cases do not apply to the sweat equity agreement signed by plaintiffs. Given the nature of their contract with ROC-NY – i.e., providing for equity in the cooperative restaurant if certain obligations were met – plaintiffs have no claim for "wages" under the Labor Law.

### POINT IV

### PLAINTIFFS' PROPOSED AMENDMENT DOES NOT RESCUE THEIR DEFECTIVE FRAUD CLAIM

Plaintiffs concede that their fraud cause of action – i.e., that defendants induced them to provide work for ROC-NY "by promising, falsely, that the work would result in an ownership share in the restaurant and future employment" (Comp. ¶ 38) – does not make out a cognizable claim under New York law because "it is duplicative of the breach of contract claim." Guilbert v. Gardner, 480 F.3d 140, 148 (2d Cir. 2007). See also Caniglia v. Chicago Tribune-New York News Syndicate Inc., 204 A.D.2d 233 (1st Dept. 1994) ("a cause of action for fraud does not arise where ... the only fraud alleged merely relates to a contracting party's alleged intent to breach a contractual obligation").

To cure this pleading deficiency, plaintiffs propose an amendment which is both puzzling and surely unavailing. Plaintiffs wish to incorporate into their fraud claim certain allegations which are already set forth in the text of their complaint, to wit: that defendants represented to plaintiffs that "they intended to create [a] 'worker owned, cooperative' restaurant, when, in fact, they intended to create a restaurant in which some employees, many years down the road, might own 20 percent of the stock of a corporation." Pl. Mem. of Law at 23. In other words, according to plaintiffs, defendants (falsely) promised them an ownership interest in a worker owned,

9

cooperative restaurant when in fact defendants only intended to create a <u>partially</u> worker owned, cooperative restaurant.

It is difficult to discern any meaningful distinction between plaintiffs' current fraud claim and their proposed fraud claim – both claims allege that defendants made false representations in order to induce plaintiffs to perform work in return for an ownership share in the restaurant. In any event, plaintiffs' proposed amendment does not affect the central defect of their claim – they are seeking to enforce a promise for an ownership share in the restaurant under both contract and fraud theories. This is not permitted under New York law.

Finally, plaintiffs' proposed amendment does not even address their failure to allege "special damages." The remedy that plaintiffs seek for defendants' purported fraud is the same remedy they seek for the alleged breach of contract: employment at the restaurant and a share of the ownership. <u>Compare</u> Comp. ¶¶ 37 and 38. Plaintiffs cannot plead a cognizable fraud claim under circumstances where the operative facts derive from a contractual relationship, unless they can show "special damages" proximately caused by their reliance upon the alleged fraudulent misrepresentation that are not recoverable under a contract theory. <u>Metropolitan Transportation Authority v. Triumph Advertising Prodouctions, Inc.</u>, 116 A.D.2d 526, 527-28 (1st Dept. 1986) (dismissing where "plaintiff seeks no special damages unrecoverable" under contract theory). Here, plaintiffs make no such allegations.

In short, plaintiffs' proposed amendment adds nothing to convert a non-cognizable claim of fraud into a cognizable one. Plaintiffs' request to amend the complaint should therefore be denied, and their Fourth Cause of Action dismissed.

## **CONCLUSION**

For the foregoing reasons, and the arguments set forth in defendants' main brief, the court should dismiss plaintiffs' First Amended Complaint in its entirety.

Dated:  New York, New York
       February 22, 2008

                              LEWIS, CLIFTON & NIKOLAIDIS, P.C.

                              /s/ Daniel E. Clifton
            By: _____
                              Daniel E. Clifton (DC 0632)
                              275 Seventh Avenue, Suite 2300
                              New York, New York 10001-6708
                              (212) 419-1500

                              Attorneys for defendants Restaurant
                              Opportunities Center of New York, 417
                              Lafayette Restaurant LLC, ROC-NY Worker
                              Owner Restaurant LLC, Saru Jayaraman, and
                              Grace Gilbert